**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**STATE OF WEST VIRGINIA ex rel.**
**DARRELL V. McGRAW, JR.,**
**ATTORNEY GENERAL,**

          Plaintiff,

**v.**                                    **CIVIL ACTION NO. 3:12-CV-64**
                                          **(JUDGE GROH)**

**FAST AUTO LOANS, INC., a Virginia**
**corporation; COMMUNITY LOANS OF**
**AMERICA, INC., a Georgia corporation**
**and sole owner and parent company of**
**Fast Auto Loans, Inc.; and ROBERT I.**
**REICH, individually and in his official**
**capacity as the president and chief**
**executive officer of Fast Auto Loans, Inc.**
**and Community Loans of America, Inc.,**

          Defendants.

## MEMORANDUM OPINION AND ORDER REMANDING CASE

Pending before the Court is the Plaintiff's Motion to Remand [Doc. 14], filed on August 8, 2012.  This motion has since been fully briefed and is now ripe for decision. Having reviewed the record and considered the arguments of the parties, this Court concludes that the motion to remand must be **GRANTED**.

## FACTUAL AND PROCEDURAL HISTORY

Defendant Fast Auto Loans, Inc. ("FAL") is a Virginia corporation engaged in the business of making automobile title loans to consumers, including West Virginia consumers who travel to Virginia to obtain such loans.  FAL does not have any offices in West Virginia. The title loans made by FAL are lawful in Virginia and are regulated by the Virginia Bureau

of Financial Institutions pursuant to Virginia's Motor Vehicle Title Loan Statute, Va. Code §6.2-2200, *et seq*. Defendant Community Loans of America, Inc. is a Georgia corporation which is the sole owner and parent company of FAL. Defendant Robert I. Reich is the president and chief executive officer of both Community Loans of America and FAL.

The Plaintiff is the Attorney General of the State of West Virginia. On June 14, 2012, the Plaintiff filed a Complaint for Injunction, Consumer Restitution, Civil Penalties, and Other Appropriate Relief ("Complaint") [Doc. 1-1 at 5-21] in the Circuit Court of Jefferson County, West Virginia. The Complaint consisted of nine causes of action based upon various purported unfair and deceptive debt collection activities violative of the West Virginia Consumer Credit and Protection Act, W. Va. Code §46A-1-101, *et seq*. ("WVCCPA").

Specifically, the Attorney General alleged the following causes of action: (1) harassing consumers and others repeatedly or continually by telephone, in violation of W. Va. Code §§46A-2-125(d) and 46A-6-104; (2) wrongfully communicating information relating to alleged indebtedness to a consumer's employer or agent, in violation of W. Va. Code §§46A-2-126(a) and 46A-6-104; (3) unreasonable publication of information relating to alleged indebtedness of consumers to relatives or family members not residing with consumers, in violation of W. Va. Code §§46A-2-126(b) and 46A-6-104; (4) unreasonable publication of information relating to alleged indebtedness of consumers to other third parties, in violation of W. Va. Code §§46A-2-126(c) and 46A-6-104; (5) accusations or threats to accuse persons of fraud, any crime, or statements intended to disgrace or subject consumers to ridicule or contempt of society, in violation of W. Va. Code §§46A-2-124(b) and 46A-6-104; (6) making false threats of arrest, criminal prosecution and other

2

prohibited actions, in violation of W. Va. Code §§46A-2-124(e)(1), 46A-2-124(f), and 46A-6-104; (7) failure to notify consumers of right to redeem collateral, in violation of W. Va. Code §46A-6-104; (8) failure to send written notice following sale of vehicle accounting for proceeds and refunding surplus when one is due, in violation of W. Va. Code §46A-6-104; and (9) employing unlicensed companies to collect alleged debts, in violation of W. Va. Code §46A-6-104.

Pursuant to W. Va. Code §46A-7-102, the Attorney General of West Virginia "within the limitations provided by law may . . . [r]eceive and act on complaints, take action designed to obtain voluntary compliance with [the WVCCPA] or commence proceedings on his own initiative."

In his prayer for relief, the Attorney General specifically requested:

(a) That the Court enter a <u>Temporary Order</u> at its first hearing as authorized by W. Va. Code §46A-7-110:

(i) enjoining Defendants from making any new loans to West Virginia consumers and from collecting any payments or seizing vehicles that secure loans already made to West Virginia consumers until the entry of a final order herein; and

(ii) requiring Defendants to produce in hard copy and electronically all documents and information pertaining to its transactions with West Virginia consumers, including records of all loans made to, all payments collected from, all collection communications with, and seizure of all vehicles from West Virginia consumers, and all records pertaining to the marketing, advertising, and soliciting of loans in West Virginia.

(b) That the Court enter a <u>Final Order</u> finding that Defendants have violated the WVCCPA as alleged herein and permanently enjoining FAL from violating the

WVCCPA and other applicable consumer protection laws;

(c)     That the Court enter a <u>Final Order</u> finding that all payments made by consumers to Defendants as a result of their threatening, coercive, oppressive, abusive, fraudulent, deceptive, misleading, unfair or unconscionable practices as set forth herein above constitute "excess charges" as defined by W. Va. Code §46A-7-111(1) and, as such, that Defendants be ordered to pay each such aggrieved consumer a civil penalty not less than the amount of the excess charge up to ten times the amount of the excess charge as authorized by W. Va. Code §46A-7-111(1);

(d)     That the Court enter a <u>Final Order</u> cancelling all debts allegedly owed by West Virginia consumers to Defendants, requiring that all such accounts be closed with a zero balance, and requiring Defendants to notify consumer reporting agencies to delete all information it may have reported pertaining to these accounts;

(e)     That the Court enter a <u>Final Order</u> finding that Defendants have engaged in a course of repeated and willful violations of the WVCCPA as alleged in the causes of action set forth herein above and requiring Defendants to pay a civil penalty of up to $5,000.00 to the State for each such violation as authorized by W. Va. Code §46A-7-111(2);

(f)     That the Court enter a <u>Final Order</u> as authorized by W. Va. Code §46A-7-108 requiring that Defendants reimburse the State for all its attorney's fees and costs expended in connection with the investigation and litigation of this matter; and

(g)     That the Court enter a <u>Final Order</u> awarding the State such other and further equitable relief as is proper and just arising from this matter.

In connection with the Complaint, the Plaintiff filed a corresponding motion for temporary relief in the circuit court [Doc. 1-1 at 53-55], moving, ostensibly pursuant to W. Va. Code §46A-7-110, "[t]hat the Defendants be enjoined from collecting or continuing to

collect any payments from West Virginia [c]onsumers and from seizing any vehicles from West Virginia [c]onsumers that secure loans already made until the final order entered herein."  The Plaintiff also moved "[t]hat the Defendants be enjoined from making any new loans to West Virginia [c]onsumers, and from placing any new liens on motor vehicles titled or registered in West Virginia, until the final order entered herein."  The circuit court granted the temporary injunction without conducting a hearing on the issue.

On July 18, 2012, the Defendants removed the instant action to this Court, asserting the existence of both federal question jurisdiction pursuant to 28 U.S.C. §1331 and diversity jurisdiction pursuant to 28 U.S.C. §1332.  Specifically with regard to federal question jurisdiction, the Defendants argued that "[t]he question of whether the Plaintiff has the legal authority under the WVCCPA to enjoin FAL from making loans in Virginia to West Virginia residents—and whether the [c]ircuit [c]ourt properly granted such relief—depends entirely upon the construction and application of federal law, i.e. the Commerce Clause . . . [t]he Plaintiff's claims therefore arise under the Constitution."

On July 19, 2012, the Defendants moved to stay and declare void the circuit court's order granting temporary injunction [Doc. 5].  The Defendants argued that pursuant to W. Va. Code §46A-7-110, the circuit court was required to conduct a hearing prior to entering a temporary injunction, which it did not do.

On July 25, 2012, the parties stipulated to the entry of an Order [Doc. 12], which provided, in pertinent part, "[t]hat the July 3, 2012 Order entered by the Circuit Court of Jefferson County, West Virginia, prior to removal be vacated," and that "[i]n reaching this Stipulation, Defendant Fast Auto Loans, Inc. states that it and its affiliates have voluntarily discontinued making loans to residents of West Virginia and will voluntarily refrain from

5

making new loans to residents of West Virginia pending further order of the court."

On August 8, 2012, the Plaintiff filed the instant Motion to Remand [Doc. 14]. On September 7, 2012, the Defendants filed a response to the Plaintiff's motion [Doc. 21], and on September 21, 2012, the Plaintiff filed a reply [Doc. 24]. This matter is now ripe for adjudication.

## DISCUSSION

### I.   Applicable Standard

Defendants in civil actions may remove a matter from state to federal court if the latter forum has original subject matter jurisdiction. This requirement can be based upon diversity jurisdiction or federal question jurisdiction. 28 U.S.C. §1441. A federal district court has federal question jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. §1331. A federal district court has diversity jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. §1332.

"The burden of demonstrating jurisdiction resides with 'the party seeking removal.'" *Maryland Stadium Authority v. Ellerbe Becket Incorporated*, 407 F.3d 255, 260 (4th Cir. 2005) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941). If federal jurisdiction is doubtful, a remand to state court is required. *Maryland Stadium*, 407 F.3d at 260. On the other hand, if this Court has jurisdiction, it is required to exercise it. *Gum v. General Electric Co.*, 5 F.Supp.2d 412, 415 (S.D.W.Va.

6

1998) ("It is well-established federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'").

## II.   **Relevant Statutes**

The WVCCPA is codified at W. Va. Code §46A-1-101, *et seq.*  Section 46A-1-104 provides that "this chapter applies if a consumer, who is a resident of this state, is induced to enter into . . . a consumer loan made pursuant to a revolving loan account . . . and payment on such account is to be made from this state."

"Consumer loan" is defined as "a loan made by a person regularly engaged in the business of making loans in which: (a) [t]he debtor is a person other than an organization; (b) [t]he debt is incurred primarily for a personal, family, household or agricultural purpose; (c) [e]ither the debt is payable in installments or a loan finance charge is made; and (d) [e]ither the principal does not exceed forty-five thousand dollars or the debt is secured by an interest in land or a factory-built home."   W. Va. Code §46A-1-102(15).

"Revolving loan account" is defined as "an arrangement between a lender and a consumer including, but not limited to, a lender credit card or similar arrangement, pursuant to which: (a) [t]he lender may permit the consumer to obtain loans from time to time; (b) the unpaid balances of principal and the loan finance and other appropriate charges are debited to an account; (c) a loan finance charge if made is not precomputed but is computed periodically on the outstanding unpaid balances of the principal of the consumer's account from time to time; and (d) there is the privilege of paying the balances in installments."  W. Va. Code §46A-1-102(40).

Section 46A-7-102 provides that the Attorney General may receive and act on complaints or commence proceedings on his own initiative.  §46A-7-103 provides that the

Attorney General may pursue any investigation, prosecute any suit and take any other proper action relating to the enforcement of any consumer protection provision in the WVCCPA.

Section 46A-7-109 provides that the Attorney General may bring a civil action to restrain a creditor from engaging in a course of: (1) making or enforcing unconscionable terms or provisions of consumer loans; (2) fraudulent or unconscionable conduct in inducing consumers to enter into consumer loans; or (3) fraudulent or unconscionable conduct in the collection of debts arising from consumer loans. Section 46A-7-110 provides that "[w]ith respect to an action brought to enjoin violations of this chapter or unconscionable agreements or fraudulent or unconscionable conduct, the attorney general may apply to the court for appropriate temporary relief against a respondent, pending final determination of the proceedings . . . [i]f the court finds *after a hearing* held upon notice to the respondent that there is reasonable cause to believe that the respondent is engaging in or is likely to engage in conduct sought to be restrained, it may grant any temporary relief or restraining order it deems appropriate." (emphasis added). Section 46A-7-111 provides for refunds and civil penalties for violations of the WVCCPA accruing to both individual consumers and to the State.

**III.   <u>Analysis</u>**

**A.     Federal Question Jurisdiction**

The Plaintiff argues that its Complaint does not allege the violation of any federal statute which would give rise to federal question jurisdiction. Moreover, the Plaintiff argues that any federal constitutional issue that might have existed in this case by virtue of the

8

temporary injunction initially sought by the Plaintiff has been rendered moot by the subsequent vacation of the circuit court's order and the Defendants' assertion that they are no longer making loans to West Virginia consumers.  The Plaintiff concedes that it "asked for admittedly overbroad injunctive relief."

The Defendants, on the other hand, argue that federal question jurisdiction does exist because this case involves the extraterritorial application of the WVCCPA to corporations located outside the State of West Virginia.  First, the Defendants argue that the Plaintiff's claims "arise under" federal law because they are completely preempted by federal law.  The Defendants argue that pursuant to the Supremacy Clause, U.S. Const. Art. VI, cl. 2, where the regulation of interstate commerce is concerned, the Commerce Clause, U.S. Const. Art. I, §8, cl. 3, completely preempts state law.

The Defendants further argue that pursuant to **Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing**, 545 U.S. 308 (2005), the Plaintiff's claims "arise under" federal law because they "necessarily" and "substantially" depend upon an interpretation of the Commerce Clause.  In **Grable**, the United States Supreme Court recognized a "longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction."  **Id.** at 312.  The Court explained that "in certain cases federal-question jurisdiction will lie over state law claims that implicate significant federal issues."  **Id.**  Such a doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  **Id.**  In determining whether or not to exercise

9

jurisdiction over such a case, the Supreme Court instructed that "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

The Defendants argue that the first prong of *Grable* is satisfied in the instant case because the Plaintiff's claims and its request for an extraterritorial injunction to bar Defendants from transacting any business in Virginia with consumers from West Virginia hinges on an interpretation of the Commerce Clause and—relatedly—the Dormant Commerce Clause, thereby raising an issue of federal law. *See, e.g., United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Management Authority*, 550 U.S. 330, 338 (2007) (explaining the "so-called 'dormant' aspect of the Commerce Clause," as such: "Although the Constitution does not in terms limit the power of States to regulate commerce, we have long interpreted the Commerce Clause as an implicit restraint on state authority, even in the absence of a conflicting federal statute." (internal citations omitted)). The Defendants argue that pursuant to Fourth Circuit law, the rule of *per se* invalidity applies to state laws applied extraterritorially. *See, e.g., Bluehippo Funding, LLC v. Darrell V. McGraw, Jr., Attorney General of West Virginia*, 609 F.Supp.2d 576, 586 (S.D.W.Va. 2009); *Carolina Trucks & Equip., Inc. v. Volvo Trucks of North America, Inc.*, 492 F.3d 484, 492 (4th Cir. 2007).

Under the second prong of *Grable*, the Defendants argue that the federal issue presented by the Plaintiff's Complaint is "actually disputed" and "substantial." It is actually disputed, the Defendants argue, because when a defendant removes a case to federal

court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction. *See **Rockwell Int'l Corp. v. United States***, 549 U.S. 457, 474 n.6 (2007). Moreover, the Defendants argue that the Plaintiff's agreement to vacation of the state court injunction *after* removal does not moot the federal constitutional issue that was raised on the face of the Complaint and the injunction issued pursuant thereto *prior to* removal. *See **St. Paul Mercury Indemnity Co. v. Red Cab Co.***, 303 U.S. 283, 293 (1938). Finally, the Defendants argue that the fact that FAL voluntarily stopped making loans to West Virginia residents is irrelevant and does not make the issue moot, because prior to the issuance of the state court injunction, FAL was at liberty to resume making loans to West Virginia residents if its business judgment so dictated.

The Defendants argue that the "substantial" requirement under the second prong of **Grable** is also met. Citing the factors annunciated by the Supreme Court of the United States in **Empire Healthchoice Assur., Inc. v. McVeigh**, 547 U.S. 677, 700 (2006), the Defendants argue that: (1) this case involves an important federal question; (2) resolution of the federal question would be dispositive of this case, because "if . . . application of the Commerce Clause renders the extraterritorial application of the WVCCPA *per se* invalid, then it is very likely that Plaintiff's attempt to prevent Defendants from transacting business in Virginia with residents of West Virginia will fail;" and (3) a decision on the federal issue in this case will control other cases, because "[t]he question of whether the WVCCPA may be applied extraterritorially . . . is primarily a legal question, and is not 'fact-bound and situation specific.'" *See **Empire***, 547 U.S. at 700; *see also **Mikulski v. Centerior Energy***

11

*Corp.*, 501 F.3d 555, 568 (6th Cir. 2007) (summarizing the ***Empire*** factors as: "(1) whether the case involves a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e. not trivial); (3) whether a decision on the federal question will resolve the case (i.e. the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e. the issue is not anomalous or isolated).").

The Plaintiff rejoins that it is seeking to enforce West Virginia statutes regarding collection activities occurring within West Virginia's borders, and that the WVCCPA does not purport to regulate conduct outside the State of West Virginia.  The Plaintiff argues that federal question jurisdiction does not exist over this matter, for two primary reasons.  First, the State argues that its claims are not preempted because they do not implicate any federal law which could conceivably preempt them:  the State argues that the issue as to the temporary injunction has been rendered moot and the State is not seeking a permanent injunction which would seek to extraterritorially regulate the Defendants.  Second, and relatedly, the Plaintiff argues that the Defendants' Commerce Clause argument amounts to nothing more than a defense to the now-moot request for temporary injunction, and as such may not properly be removed.

As an initial matter, the Court finds that to the extent the Defendants seek to argue that the relief sought by the Plaintiff conflicts with the Commerce Clause, such an argument merely constitutes a federal defense to the Plaintiff's Complaint, which is not grounds for removal.   "[A]n action cannot be removed to federal court based upon 'a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both

12

parties admit that the defense is the only question truly at issue in the case.'" *West Virginia v. CashCall, Inc.*, 605 F.Supp.2d 781, 784 (S.D.W.Va. 2009) (citing *Franchise Tax Bd. of State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 14 (1983); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)). A defense to the Plaintiff's sought-after injunction, even a defense which is based upon federal law, is an issue that can and should ordinarily be raised in state court. After all, state courts "are presumed competent to resolve federal issues," and "when a state proceeding presents a federal issue, even a pre-emption issue, the proper course is to seek resolution of that issue by the state court." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149-50 (1988).

Furthermore, the Court concludes that any federal question which might have existed in this case has been rendered moot by the vacation of the state court's injunction. Simply put, there is no longer any actual controversy between the parties with regard to the Commerce Clause or the extraterritorial application of West Virginia law. In *United States v. Jones*, 136 F.3d 342 (4th Cir. 1998), the Fourth Circuit held that:

> In order to have standing, a plaintiff must meet three criteria: First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 347-48 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992)).

13

The third prong of the *Jones* analysis is no longer met, because there is no active case or controversy between the parties.  The Plaintiff is no longer seeking an injunction which would bar the Defendants from making loans to West Virginia consumers who travel to Virginia or from collecting on debts owed by West Virginia consumers.  The only injunction currently being sought by the Plaintiff is an injunction barring the Defendants from violating the WVCCPA.  Such an injunction does not implicate any federal law.

In their assertion that "going forward, it is not at all certain that vacating the state court injunction has put an end to the federal constitutional issue, since Plaintiff continues to assert that it has a right to seek 'broad injunctive relief,'" the Defendants seem to imply that this case might be subject to the mootness exception for "wrongs capable of repetition, yet evading review."  Such an exception applies where "(1) the challenged action is too short in duration to be fully litigated and (2) there is a reasonable expectation that the same party will be subjected to the same action again."  *In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 346-47 (4th Cir. 1994) (citing *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 63 (4th Cir. 1989)).

However, the "capable of repetition yet evading review" exception to the mootness doctrine "applies only in 'exceptional situations.'" *Fleming v. Workers Compensation Com'n of Comm. of Va.*, 878 F.Supp. 852, 858 (E.D.Va. 1995), *aff'd*, 78 F.3d 578 (4th Cir. 1996).  "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* (citing *Renne v. Geary*, 501 U.S. 312, 321 (1991)).  A party seeking to avail itself of the "capable of repetition yet evading review" exception "must show 'a

14

demonstrated probability' that the same controversy will arise again." *Fleming*, 878 F.Supp. at 858 (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).   "This requires 'a reasonable quantity of proof—perhaps even [a showing] by a preponderance of the evidence.'" *Fleming*, 878 F.Supp. at 858 (citing *New Jersey Turnpike Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 33 (3d Cir. 1985)).   "If a 'mere physical or theoretical possibility was sufficient . . . virtually any matter of short duration would be reviewable.'" *Fleming*, 878 F.Supp. at 858 (citing *Murphy, supra*, at 482).

Regardless of the theoretical possibility that the Plaintiff could move for another injunction seeking to extraterritorially apply the WVCCPA to prevent the Defendants from making loans to West Virginia consumers in Virgina, or from collecting on debts owed by West Virginia consumers, the Court does not harbor any reasonable expectation that the Plaintiff will take such an action.   The state court injunction has been vacated, and the Plaintiff is not seeking a permanent injunction to the same effect.   At this juncture, it is academic whether or not the Commerce Clause would permit the entry of such an injunction, because the injunction is no longer in force, and for that reason, the third prong of *Jones* is no longer met.

The Plaintiff has averred that upon remand it intends to amend its Complaint to "delet[e] the admittedly too broad and now wholly unnecessary request that Defendants be enjoined from making new loans to residents of West Virginia."   The Defendants, citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007),  argue that "Plaintiff cannot unring the jurisdictional bell by subsequently amending the Complaint."   *See Id.* at 474, n.6 ("It is true that, when a defendant removes a case to federal court based on the presence

of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction.") (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 346, 357 (1988); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938)).  However, the *Rockwell* Court also observed in the same footnote that "removal cases raise forum-manipulation concerns that simply do not exist when it is the *plaintiff* who chooses a federal forum and then pleads away jurisdiction through amendment." *Rockwell*, *supra*, at 474, n.6.  In the same vein, the Defendants themselves in the instant case entered into a stipulation with the Plaintiff vacating the state court order which formed the basis for the Defendants' removal in the first place.  *See* Defendants' Notice of Removal, Doc. 1 at 5 ("[i]n this case, the question of whether the Plaintiff has the legal authority under the WVCCPA to enjoin FAL from making loans in Virginia to West Virginia residents—and whether the [c]ircuit [c]ourt properly granted such relief—depends entirely upon the construction and application of federal law, i.e. the Commerce Clause.").

This distinction is further born out in the Defendants' other cited cases on the subject, *Therrien v. Hamilton*, 881 F.Supp. 76 (D. Mass. 1995), and *Westmoreland Hospital Ass'n v. Blue Cross of Western Pa.*, 605 F.2d 119 (3rd Cir. 1979), *cert. denied*, 444 U.S. 1077 (1980).  In *Therrien*, a police officer brought an action against city and state officials, alleging that defendants had infringed his right to petition the government for redress of grievances and his right to speak freely.  *Id.* at 77-78.  The plaintiff originally filed his complaint in state court, asserting violations of both state and federal statutes.  The plaintiff subsequently amended his complaint to assert only state law causes of action.  *Id.* at 78.  The defendants removed the case, and the plaintiff sought remand.  *Id.*  The United

16

States District Court for the District of Massachusetts found that while "[a]n amendment to a complaint *after* removal designed to eliminate the federal claim will not defeat jurisdiction . . . [i]n the present action . . . plaintiff specifically amended his complaint *before* removal, although still with the facially obvious intent of eliminating federal jurisdiction." **Id.** at 79 (emphasis in original).  However, the district court found that "[d]espite his efforts, Plaintiff's amended complaint did not eliminate any and all reference to federal law," because "[certain paragraphs] specifically refer to protected conduct under the First Amendment to the United States Constitution." **Id.** Therefore, the court concluded that "[a]t a minimum, such references necessarily keep alive the question of whether Plaintiff's complaint, even as amended, is specifically founded on a claim or right arising under the Constitution or laws of the United States." **Id.** In **Therrien**, therefore, there existed an independent basis for federal jurisdiction even after the plaintiff had amended his complaint. In the instant case, there is no basis for federal jurisdiction now that the state court injunction has been vacated.

Likewise, in **Westmoreland**, certain hospitals brought an action against a health insurer for money damages for alleged breaches of cost-reimbursement contracts and for injunctive relief to prevent the health insurer from deducting federal mental health staff grants from computation of the hospitals' ordinary costs of operation. **Id.** at 121-122.  It is clear from review of the United States Court of Appeals for the Third Circuit's opinion that there were multiple and distinct bases for federal question jurisdiction in that case.  *See* **Id.** at  123 ("here the plaintiffs' complaint introduced the federal question . . . [p]aragraphs 9, 12 and 13 of the complaint made reference to the federal statutes in question; [paragraph]

17

14 described the federal grants in detail . . . [p]aragraph 15 was an averment of the mandatory sanction of federal law . . . .").  In the instant case, the only possible basis for federal question jurisdiction would have been the issue with regard to the Commerce Clause, which was obviated by the parties' stipulated vacation of the state court's injunction.

The Defendants also cite *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938), wherein the Supreme Court of the United States held that "events occurring subsequent to removal . . . do not oust the district court's jurisdiction once it has attached." *Id.* at 293.  The issue in *St. Paul*, however, was whether or not an amendment which reduced the amount in controversy to below the requisite jurisdictional amount could constitute a sufficient basis for remand.  *Id.* at 284.  The Supreme Court held that it could not.  *Id.* at 293.  As has already been addressed, *St. Paul* is not analogous to the instant case.  The instant case does not involve an amendment by a plaintiff after removal for purposes of defeating a federal court's jurisdiction.  It involves a stipulation by both the Plaintiff and the Defendants which completely undermines the Defendants' basis for removal.  As a result, there are no "forum-manipulation concerns" which would compel the continuing exercise of this Court's jurisdiction.  *See Rockwell*, 549 U.S. at 474 n.6.

Moreover, the Court is unpersuaded by the Defendants' argument that federal question jurisdiction in this case arises pursuant to *Grable*.  In *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), the Supreme Court of the United States clarified and defined the parameters of its prior holding in *Grable*.  The plaintiff in *Empire* was a health insurance carrier for federal employees which brought an action against a

18

former enrollee's estate seeking reimbursement of insurance benefits on grounds that the enrollee had recovered damages for his injuries in a state court tort action. *Empire*, 547 U.S. at 687-89. In response to the argument that the petitioner health insurance carrier's reimbursement claim, despite not being a "cause of action created by federal law," nevertheless arose under federal law for §1331 purposes pursuant to *Grable*, the Supreme Court held that:

> This case is poles apart from *Grable*. The dispute there centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as "substantial," and its resolution was both dispositive of the case and would be controlling in numerous other cases. Here, the reimbursement claim was triggered, not by the action of any federal department, agency, or service, but by the settlement of a personal-injury action launched in state court, and the bottom-line practical issue is the share of that settlement properly payable to Empire.
>
> *Grable* presented a nearly "pure issue of law," one "that could be settled once and for all and thereafter would govern numerous tax sale cases." In contrast, Empire's reimbursement claim . . . is fact-bound and situation-specific.
>
> . . .
>
> [I]t is hardly apparent why a proper "federal-state balance" would place such a nonstatutory issue under the complete governance of federal law, to be declared in a federal forum. The state court in which the personal-injury suit was lodged is competent to apply federal law, to the extent it is relevant[.]
>
> . . .
>
> In sum, *Grable* emphasized that it takes more than a federal element "to open the 'arising under' door." This case cannot be squeezed into the slim category *Grable* exemplifies.

*Empire*, 547 U.S. at 699-701.

In *Morgan County War Memorial Hospital ex rel. Bd. of Directors of War Memorial Hospital v. Baker*, 314 Fed.Appx. 529 (4th Cir. 2008), the United States Court of Appeals for the Fourth Circuit applied both *Grable* and *Empire*. *War Memorial* involved an action by a county hospital for a declaration that the hospital had the ability to unilaterally terminate a retirement plan and retain the plan's residual assets. *Id.* at 531. The plan participants cross-claimed for breach of fiduciary duty. *Id.* at 531-32. In reaching its determination that "a breach of fiduciary duty claim against War Memorial does not necessarily depend upon resolution of substantial questions of federal tax law," *Id.* at 534, the Fourth Circuit looked to *Empire* and held that:

> Applying [the *Grable*] factors in this case makes clear that any breach of fiduciary duty claim by the Appellees cannot be squeezed into *Grable's* slim category. The current dispute centers on the actions of private parties, resolution of any question of federal tax law is not "dispositive" of a breach of fiduciary duty claim, and it is hard to see how resolution of any federal tax law issue in this case would be controlling in "numerous" cases.
>
> At bottom, the fact that federal tax implications may arise from the distribution of the Plan's assets, and that the Appellees rejected a proposed distribution that was approved by the IRS, cannot be a basis for federal jurisdiction. Such a conclusion would shift virtually every business transaction and trust distribution into federal court, violently upsetting the federal/state balance.

*War Memorial Hospital*, 314 Fed.Appx. at 536. *See also State of West Virginia ex rel. Darrell V. McGraw, Jr. v. Rite Aid of West Virginia, Inc.*, 2010 WL 454488, at *2 (S.D.W.Va. Feb. 1, 2010) (characterizing *Grable* as a "rare type of 'arising under' federal jurisdiction," and finding that "not every state-law claim raising a federal issue can invoke federal question jurisdiction . . . [i]ndeed, such cases will be exceptional."); *State of West*

*Virginia ex rel. Darrell V. McGraw, Jr. v. JP Morgan Chase & Co.*, 2012 WL 441178, at

*13-14 (S.D.W.Va. Feb. 10, 2012) (noting that the *Empire* Court characterized the category

of cases created by *Grable* as "special and small," and holding that "[i]f the Court accepts

Defendants' argument that *Grable* jurisdiction can be found simply because the Complaint

will require some application of federal law, in an area where there is substantial federal

regulation, the category of eligible cases will no longer be special nor small . . . [s]uch a

result would undermine the well-pleaded complaint rule in many areas of law where there

is extensive federal involvement.").

In the same vein, applying the *Empire* factors to the case *sub judice* makes clear

that the instant case "cannot be squeezed into *Grable's* slim category."  In the *Empire*

Court's recitation of the factors which it considered important to *Grable*, it listed the

following: (1) the dispute in *Grable* centered on the action of a federal agency (IRS) and

its compatibility with a federal statute; (2) the question qualified as 'substantial;' and (3) its

resolution was both dispositive of the case and (4) would be controlling in numerous other

cases.  *See War Memorial*, 314 Fed.Appx. at 536 (citing *Empire*, 547 U.S. at 700).

As there is no federal agency involved in the instant case, there is no need to

consider the first factor.

With regard to the second factor, because the issue with regard to the temporary

injunction has been rendered moot, there is no "substantial" federal question presented

in this case.

With regard to the third factor, even assuming that the injunction issue were not

moot, that issue in and of itself would not be dispositive of this case.  The temporary

injunction has been vacated, but the Plaintiff still has valid state-law claims which it is asserting.

Finally, with regard to the fourth factor, while a decision regarding the legality of extraterritorial injunctions entered under the auspices of the WVCCPA is an issue which could conceivably be controlling in other cases, the issue is moot, and the Attorney General concedes that the injunction initially sought was overbroad.

Therefore, **Grable** is not applicable to the instant case, and the Court concludes that jurisdiction in this case does not "aris[e] under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. §1331.

### B.    Diversity Jurisdiction

Inasmuch as this Court has already determined that federal question jurisdiction does not exist with regard to this case, jurisdiction, if it is to be found at all, must be grounded in diversity pursuant to 28 U.S.C. §1332.  Making such a showing, however, is problematic for the Defendants in at least one important respect:  ordinarily, the attorney general of a state is not considered a "citizen" for purposes of §1332 jurisdiction.

It is well settled that a state is not a citizen for purposes of diversity jurisdiction. ***Martin Sales & Processing, Inc. v. West Virginia Dep't of Energy***, 815 F.Supp. 940, 942 (S.D.W.Va. 1993) (citing ***Moor v. County of Alameda***, 411 U.S. 693, 717 (1973)); ***State of West Virginia v. Morgan Stanley & Co.***, 747 F.Supp. 332, 336 (S.D.W.Va.1990) (citing ***Postal Tel. Cable Co. v. Alabama***, 155 U.S. 482 (1894)); ***State of West Virginia v. Haynes***, 348 F.Supp. 1374, 1376 (S.D.W.Va.1972). An action between a state and a citizen of another state is not a suit between citizens of different states, and diversity

jurisdiction does not exist. *Morgan Stanley*, 747 F.2d at 336; *Postal Tel. Cable Co.,* 155 U.S. at 487.

It is also well settled that courts should disregard nominal parties when determining whether diversity jurisdiction exists, and look instead to the real parties in interest in the controversy. *Martin Sales*, 815 F.Supp. at 942 (citing *Morgan Stanley*, 747 F.2d at 336; *Haynes,* 348 F.Supp. at 1376–77). If the real party in interest is the state, diversity jurisdiction does not exist and a federal court may not hear the suit. *State Highway Comm'n v. Utah Constr. Co.,* 278 U.S. 194, 199–200 (1928).

The Defendants argue that the Plaintiff is a nominal party because the only claim which the Plaintiff asserts in a public capacity rather than on behalf of West Virginia consumers is its claim for civil penalties. Citing to the WVCCPA, W. Va. Code §46A-7-111(1), the Defendants argue that the Attorney General was required to make a demand prior to bringing a civil action against the Defendants, which the Defendants allege the Attorney General did not do. Therefore, the Defendants argue, the Attorney General cannot prevail on the State's claims and can only prevail on claims asserted on behalf of individual West Virginia consumers, rendering the Attorney General in this case a nominal party.

However, regardless of any defenses to the assessment of civil penalties which the Defendants might have by virtue of the Attorney General's failure to make a pre-suit demand, the Court concludes that this case is a classic *parens patriae* action in which the Attorney General is a real party in interest. *See, e.g., West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169 (4th Cir. 2011); *West Virginia ex rel. McGraw v. JP*

*Morgan Chase & Co.*, 2012 WL 441178 (S.D.W.Va. Feb. 10, 2012).

In *CVS*, the United States Court of Appeals for the Fourth Circuit considered a WVCCPA case similar to the one now before this Court.  In *CVS*, the Attorney General of West Virginia brought an action in state court against certain pharmacies alleging violations of West Virginia's generic-drug pricing statute and the WVCCPA.  *Id.* at 172.  The defendants then removed under the Class Action Fairness Act ("CAFA"), after which the United States District Court for the Southern District of West Virginia granted the Attorney General's motion to remand.  *Id.* at 173-74.  In distinguishing a CAFA action from the type of action involved in *CVS*, the Fourth Circuit held that:

> The West Virginia statutes, on which the Attorney General relies for his claims, contain virtually none of the essential requirements for a Rule 23 class action.  To begin with, the Attorney General is not designated as a member of the class whose claim would be typical of the claims of class members.  Rather, he is authorized to file suit independently of any consumer complaints, as a *parens patriae*, that is, as the legal representative of the State to vindicate the State's sovereign and quasi-sovereign interests, as well as the individual interests of the State's citizens.  Indeed, the fact that the Attorney General is acting to obtain disgorgement of ill-gotten gains, "separate and apart from the interests of particular consumers in obtaining recompense," validates this action as a *parens patriae* action.

*Id.* at 175-76 (internal citations omitted).

According to the Fourth Circuit, "where West Virginia has raised no federal question and where all persons on whose behalf West Virginia has filed are West Virginia citizens, the 'claim of sovereign protection from removal arises in its most powerful form.'"  *Id.* at 178 (citing *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 706 (5th Cir. 2008)).  "Such sovereign protection derives from our constitutional structure and serves the important

24

function of preserving the 'dignity' to which states are entitled 'as residuary sovereigns and joint participants in the governance of the Nation.'" *CVS*, 646 F.3d at 178 (citing *Alden v. Maine*, 527 U.S. 706, 713-14, 748-49 (1999); *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 268 (1997)).  "It does so by preventing States from being involuntarily 'dragged' into any court—a prerogative of sovereigns well established at the time of the founding." *CVS*, 646 F.3d at 178 (citing *Alden*, *supra*).  Therefore, "[w]hile it is true that West Virginia voluntarily entered into its own courts to enforce its laws, it did not voluntarily consent to removal of its case to a federal court, and a federal court should be most reluctant to compel such removal, reserving its constitutional supremacy only for when removal serves an overriding federal interest." *Id.*

In *West Virginia ex rel. McGraw v. JP Morgan Chase & Co.*, 2012 WL 441178 (S.D.W.Va. Feb. 10, 2012), the United States District Court for the Southern District of West Virginia considered another WVCCPA action brought by the West Virginia Attorney General.  In *JP Morgan*, the Attorney General filed a complaint against eight credit card issuers for violations of the WVCCPA.  *Id.* at *1.  The defendants removed, and the Attorney General moved for remand.  *Id.*  The defendants argued that the complaint in that case was best viewed as representing the interests of the individual West Virginia cardholders, rather than the Attorney General's interest as *parens patriae*, *Id.* at *9, but the district court held that "[d]efendants' removal argument cannot succeed under the Fourth Circuit's recent *CVS Pharmacy* decision."  *Id.* at *10.

Building on the Fourth Circuit's analysis in *CVS,* the *JP Morgan* court observed that "[t]he power to sue as *parens patriae*—literally, parent of the country—is 'inherent in the

25

supreme power of every State.'" **JP Morgan** at *12 (citing **Mormon Church v. United States**, 136 U.S. 1, 57 (1890)).  "In order to bring a *parens patriae* action, 'the State must articulate an interest apart from the interests of the particular private parties, i.e., the State must be more than a nominal party.'" **Id.** (citing **Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez**, 458 U.S. 592, 606 (1982)).  "As *parens patriae*, the State may assert 'quasi-sovereign interests,' which 'are not sovereign interests, proprietary interests, or private interests pursued by the State as a nominal party . . . [t]hey consist of a set of interests that the State has in the well-being of its populace.'" **Id.** (citing **Snapp & Son**, *supra*).  "A state may have a quasi-sovereign interest in 'bringing an action to enforce its laws, disgorge the proceeds of ill-gotten gains, and refund them to its citizens.'" **Id.** (citing **South Carolina v. AU Optronics Corp.**, 2011 WL 4344079, at *6 (D.S.C. Sept. 14, 2011)).

These legal findings compelled the district court to the conclusion that:

> Turning to the "essential nature and effect" of this proceeding, it is clear that the Attorney General is the real party in interest. The Attorney General seeks injunctive and monetary penalties, and only some of those penalties would by payable to individual cardholders harmed by Defendants' allegedly deceptive and unfair practices.  These refunds do not dominate the action.  Rather, as the Fourth Circuit recognized in **CVS Pharmacy**, this type of WVCCPA action is a *parens patriae* action.

**Id.** at *12.

The same is true in the instant case.  The Attorney General is seeking injunctive and monetary penalties, only some of which would be payable to individual West Virginia consumers.  That the Defendants might have a defense to certain penalties sought by the Attorney General does not change the essential nature of the action, which is a

quintessential *parens patriae* action.  As such, diversity jurisdiction does not exist in this case.

## **CONCLUSION**

For the foregoing reasons, this Court concludes that the Plaintiff's Motion to Remand should be, and hereby is, **GRANTED**.  Accordingly, this matter is hereby **REMANDED** to the Circuit Court of Jefferson County, West Virginia.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or *pro se* parties.

**DATED:** January 11, 2013

GINA M. GROH
UNITED STATES DISTRICT JUDGE